IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JUSTIN A. MORTON,

    Plaintiff,

vs.

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Civil Action No. 14-387

AMBROSE, Senior District Judge

## OPINION
## and
## ORDER OF COURT

### SYNOPSIS

Pending before the Court are Cross-Motions for Summary Judgment. (Docket Nos. 13 and 17). Both parties have filed Briefs in Support of their Motions. (Docket Nos. 14 and 18). After careful consideration of the submissions of the parties, and based on my Opinion set forth below, I am denying Defendant's Motion for Summary Judgment (Docket No. 17) and granting Plaintiff's Motion for Summary Judgment (Docket No. 13).

### I. BACKGROUND

Plaintiff has brought this action for review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act") and for Supplemental Security Income ("SSI") under Title XVI of the Act. On or about October 20, 2010, Plaintiff applied for DIB and SSI. (R. 87, 97, 255-265). In both applications, he alleged that since October 1, 2008, he had been disabled due to epilepsy, seizures, frequent migraines, inability to lift over 40 pounds, problems concentrating,

1

short- to long-term memory loss, and trouble sleeping. Id. His last date insured is September 30, 2010. (R. 14). The state agency denied his claims initially, and he requested an administrative hearing. (R. 134-159). Administrative Law Judge ("ALJ") Marty Pillion held a hearing on November 10, 2011. (R. 79-83). At that hearing, Plaintiff was not represented by counsel, so the ALJ postponed the case to allow Plaintiff the opportunity to retain counsel. Id. ALJ Pillion held a second hearing on January 5, 2012, at which Plaintiff was represented by counsel. (R. 28-78). Plaintiff appeared at the hearing and testified on his own behalf. Id. Plaintiff's girlfriend, Cindy George; Plaintiff's uncle, Donald Morton; and a vocational expert also were present at the hearing and testified. (R. 62-75). In a decision dated March 28, 2012, the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could perform and, therefore, that Plaintiff was not disabled under the Act. (R. 12-22). Plaintiff requested review of the ALJ's determination by the Appeals Council, and, on August 14, 2013, the Appeals Council denied Plaintiff's request for review. (R. 1-6). Having exhausted all of his administrative remedies, Plaintiff filed this action.

The parties have filed Cross-Motions for Summary Judgment. (Docket Nos. 13 and 17). The issues are now ripe for my review.

## II. LEGAL ANALYSIS

### A. STANDARD OF REVIEW

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. Allen v. Bowen, 881 F.2d 37, 39 (3d Cir. 1989). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Additionally, the Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g); Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir. 1979). A district court

cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. Palmer v. Apfel, 995 F. Supp. 549, 552 (E.D. Pa. 1998). Where the ALJ's findings of fact are supported by substantial evidence, a court is bound by those findings, even if the court would have decided the factual inquiry differently. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. See 5 U.S.C. § 706.

To be eligible for social security benefits, the plaintiff must demonstrate that he cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 1382(a)(3)(A); Brewster v. Heckler, 786 F.2d 581, 583 (3d Cir. 1986).

The Commissioner has provided the ALJ with a five-step sequential analysis to use when evaluating the disabled status of each claimant. 20 C.F.R. §§ 404.1520, 416.920. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R. pt. 404, subpt. P, app. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy, in light of his age, education, work experience and residual functional capacity. 20 C.F.R. §§ 404.1520, 416.920. The claimant carries the initial burden of demonstrating by medical evidence that he is unable to return to her previous employment (steps 1-4). Dobrowolsky, 606 F.2d at 406. Once the claimant meets this burden, the burden of proof shifts to the Commissioner to show that the claimant can engage in alternative substantial gainful

activity (step 5). Id.

A district court, after reviewing the entire record may affirm, modify, or reverse the decision with or without remand to the Commissioner for rehearing. Podedworny v. Harris, 745 F.2d 210, 221 (3d Cir. 1984).

**B.      WHETHER THE ALJ IMPROPERLY EVALUATED PLAINTIFF'S CREDIBILITY**

Plaintiff argues that the ALJ improperly diminished Plaintiff's credibility for "non-compliance with medication and treatment" without accounting for Plaintiff's lack of health insurance. Pl.'s Br. [ECF No. 14] at 21-25. After careful consideration, I agree.

It is well-established that the ALJ is charged with the responsibility of determining a claimant's credibility. See Baerga v. Richardson, 500 F.2d 309, 312 (3d Cir. 1974). The ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reason for that weight." S.S.R. 96-7p. Ordinarily, an ALJ's credibility determination is entitled to great deference. See Zirnsak v. Colvin, 777 F.3d 607, 612 (3d Cir. 2014); Reefer v. Barnhart, 326 F.3d 376, 380 (3d Cir.2003).

As the ALJ stated, he must follow a two-step process when assessing pain: first, he must determine whether there is a medical impairment that could reasonably be expected to produce the plaintiff's pain or other symptoms; and, second, he must evaluate the intensity, persistence, and limiting effects of the plaintiff's symptoms to determine the extent to which they limit the plaintiff's functioning. (R.17). Pain alone, however, does not establish a disability. 20 C.F.R. §§ 404.1529(a); 416.929(a). Allegations of pain must be consistent with objective medical evidence and the ALJ must explain the reasons for rejecting non-medical testimony. Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000).

4

In determining the limits on a claimant's capacity for work, the ALJ will consider the entire case record, including evidence from the treating, examining, and consulting physicians; observations from agency employees; and other factors such as the claimant's daily activities, descriptions of pain, precipitating and aggravating factors, type, dosage, effectiveness and side effects of medications, treatment other than medication, and other measures used to relieve the pain. 20 C.F.R. §§ 404.1529(c), 416.929(c); S.S.R. 96-7p. The ALJ also will look at inconsistencies between the claimant's statements and the evidence presented. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4). Inconsistencies in a claimant's testimony or daily activities permit an ALJ to conclude that some or all of the claimant's testimony about her limitations or symptoms is less than fully credible. See Burns v. Barnhart, 312 F.3d 113, 129–30 (3d Cir. 2002).

Here, the ALJ concluded that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not credible to the extent they were inconsistent with the ALJ's RFC finding. (R. 18). In support of this conclusion, the ALJ cited several times to evidence that Plaintiff was "non-compliant with medication." See, e.g., id. at 18 (explaining that Plaintiff reported to the emergency room in December 2008 due to seizure activity but that the attending physician noted Plaintiff was not taking any seizure medicine as prescribed); id. (the claimant was non-compliant with medication in February 2011); id. (noting that "the documentary medical evidence revealed the claimant continued to be non-compliant with medication"); id. at 19 (stating that on several occasions, Plaintiff reported he was taking no medication at all) (citing Exs. 2E, 8E, 10E, 4F, 12F, 15F, 18F). The ALJ also noted that Plaintiff "has not required aggressive medical treatment, frequent hospital confinement and/or frequent emergency room care or surgical intervention for his condition notwithstanding his allegations of total debilitating symptomology." Id. at 19. Plaintiff contends that the ALJ erred in concluding he lacked credibility due to non-compliance with medication, conservative treatment, and/or lapses in

treatment because, in so finding, he failed to address his inability to afford such treatment due to lack of medical insurance.  Pl.'s Br. [ECF No. 14] at 21-25.

It is well-established that an "ALJ may rely on lack of treatment, or the conservative nature of treatment, to make an adverse credibility finding, but only if the ALJ acknowledges and considers possible explanations for the course of treatment."  Wilson v. Colvin, No. 3:13-cv-02401-GBC, 2014 WL 4105288, at * 11 (M.D. Pa. Aug. 19, 2014).  As set forth in Social Security Ruling 96-7p, "[t]he adjudicator must not draw any inferences about an individual's symptoms and their functional effect from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment."  S.S.R. 96-7p, 1996 WL 374186, at **7-8.  Possible explanations that may provide insight into an individual's credibility include the inability to afford treatment and/or lack of access to free or low-cost medical services.  Id.  Courts routinely have remanded cases in which the ALJ's credibility analysis fails to address evidence that a claimant declined or failed to pursue more aggressive treatment due to lack of medical insurance.  See, e.g., Newell v. Comm'r of Soc. Sec., 347 F.3d 541, 547 (3d Cir. 2003); Wilson, 2014 WL 4105288, at 11-12; Kinney v. Comm'r of Soc. Sec., 244 F. App'x 467, 470 (3d Cir. 2007); Sincavage v. Barnhart, 171 F. App'x 924, 927 (3d Cir. 2006); Henderson v. Astrue, 887 F. Supp. 2d 617, 638-39 (W.D. Pa. 2012); Plank v. Colvin, Civ. No. 12-4144, 2013 WL 6388486, at *8 (E.D. Pa. Dec. 6, 2013).

In this case, Plaintiff's treatment records contain numerous notations that he could not afford recommended medications and/or certain neurological treatment during periods when he lacked insurance and/or other financial resources.  See, e.g., R. 443, 445, 448, 513, 516.  Among other things, Plaintiff claimed that, due to his insurance issues, he could not afford certain medications, could not remain hospitalized for more than 48 hours, and preferred to follow up with

his primary care physician because his neurologist was too expensive. See id. Plaintiff also testified regarding his lack of insurance during the administrative hearing. (R. 44-46). In his analysis, the ALJ even acknowledged that Plaintiff reported that he was non-compliant with medication due to a loss of insurance and was trying to obtain new insurance. (R. 18, citing Ex. 15F). The ALJ, however, never stated whether he credited that testimony and, as set forth above, clearly cited non-compliance with medication, lapses in treatment, and conservative treatment as reasons to discredit the claimed intensity, persistence, and limiting effects of Plaintiff's headaches and seizures. (R. 18-19). Because the ALJ failed to consider Plaintiff's explanation for his non-compliance with medication, gaps in treatment, and/or conservative treatment course, his rejection of Plaintiff's credibility on these grounds cannot stand. See Wilson, 2014 WL 4105288, at *11; S.S.R. 96-7p. Upon remand, the ALJ must reassess Plaintiff's credibility in accordance with S.S.R. 96-7p.[1]

## C. WHETHER THE ALJ FAILED TO GIVE APPROPRIATE WEIGHT TO THE OPINIONS OF PLAINTIFF'S TREATING PHYSICIAN

Plaintiff argues that the ALJ erred in assigning "partial weight" to the opinions of his treating neurologist, Mihaela Mihaescu, M.D. Specifically, Plaintiff contends that the ALJ failed to provide valid justification for his rejection of two particular limitations, *i.e.*, that Plaintiff would require unscheduled breaks and be absent from work more than four times a month due to severe intractable headaches. Pl.'s Br. [ECF No. 14] at 15-21. Plaintiff contends that the

---

[1] On remand, the ALJ is not required to credit Plaintiff's testimony and, if supported by specific, legitimate reasons, he may still be able to conclude that Plaintiff's course of treatment undermines his credibility or that other grounds such as Plaintiff's activities of daily living are inconsistent with disabling pain. Because the ALJ did not discuss Plaintiff's insurance issues in his credibility analysis, however, I am unable to determine whether he considered his lack of insurance or merely ignored it. As such, I cannot conclude at this juncture that Plaintiff's course of treatment, including his non-compliance with medication, provides substantial evidence supporting the ALJ's credibility determination. See Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 121 (3d Cir. 2000).

record evidence supports these limitations and that, under applicable regulations, the ALJ should have incorporated them into his RFC finding.

The amount of weight accorded to medical opinions is well-established. Generally, the ALJ will give more weight to the opinion of a source who has examined the claimant than to a non-examining source. 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1). In addition, the ALJ generally will give more weight to opinions from a treating physician, "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." Id. §§ 404.1527(c)(2), 416.927(c)(2). If the ALJ finds that "a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence [of] record," he must give that opinion controlling weight. Id. Also, "the more consistent an opinion is with the record as a whole, the more weight [the ALJ generally] will give to that opinion." Id. §§ 404.1527(c)(4), 416.927(c)(4). In the event of conflicting medical evidence, the Court of Appeals for the Third Circuit has explained:

> "A cardinal principle guiding disability determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on continuing observation of the patient's condition over a prolonged period of time.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999)). However, "where . . . the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit" and may reject the treating physician's assessment if such rejection is based on contradictory medical evidence. Id. Similarly, under 20 C.F.R. § 416.927(d)(2), the opinion of a treating physician is to be given controlling weight only when it is well-supported by medical evidence and is consistent with other evidence in the record.

Becker v. Comm'r of Social Sec. Admin., 403 F. App'x 679, 686 (3d Cir. 2010). Although the ALJ

may choose whom to credit when faced with a conflict, he "cannot reject evidence for no reason or for the wrong reason." Diaz v. Comm'r of Soc. Security, 577 F.3d 500, 505 (3d Cir. 2009).

Here, the record evidence shows that Plaintiff saw neurologist Mihaela Mihaescu, M.D., off and on between April 2008 and May 2011 for his seizures and headaches. (R. 435-450, 510-516). On January 9, 2012, Dr. Mihaescu completed a "Headaches Residual Functional Capacity Questionnaire" in which she opined, inter alia, that, due to his headaches, Plaintiff would need to take unscheduled breaks during the workday and that he would likely miss more than four days of work per month. (R. 559-565).[2]

The ALJ agreed that Dr. Mihaescu was a treating source. (R. 19). Nevertheless, he gave her January 9, 2012 opinion "partial weight" to the extent it was consistent with the RFC finding. Id. Although the ALJ acknowledged Dr. Mihaescu's opinion that Plaintiff would require extra breaks and be absent from work more than four times a month, he did not credit those restrictions because Dr. Mihaescu "opined within the same document that the claimant was capable of low-stress jobs, and her previous notes did not contain any reference to severe and debilitating symptoms." Id. (citing Exs. 8F, 15F, 18F, 19F). The ALJ also noted that the evidence showed Plaintiff did not experience seizures while on medication and experienced no side effects. Id. at 19-20 (citing Exs. 8F, 15F).

As an initial matter, I agree with Plaintiff that the ALJ's reference to Plaintiff's seizures is not pertinent to whether Plaintiff's *headaches* would affect his ability to attend work on a regular and continuous basis. Dr. Mihaescu's January 9, 2012 opinion addresses mainly Plaintiff's headaches, not his seizures. (R. 559-565). Moreover, the medical evidence of record includes notations that some medications Plaintiff took helped with those seizures, but did not help his

---

[2] As Plaintiff correctly notes, the vocational expert testified that an individual who would be absent more than two days of work a month and/or would be off-task more than ten percent of an eight-hour workday would be precluded from any competitive work. (R. 74-75).

9

headaches.  See, e.g., R. 513 (noting that Depakote had kept him seizure-free, but was not helping with his headaches).   Thus, on remand, the ALJ must evaluate Dr. Mihaescu's opinion in the context of the question she was asked to answer – i.e., the effects of Plaintiff's headaches on his ability to work.  With respect to the remaining reasons given, the ALJ would be entitled to afford less than great weight to a treating physician's opinion for these reasons if supported by record evidence.   In this case, however, the ALJ's analysis of Dr. Mihaescu's records is colored by his opinion that those records reflect a course of non-compliance and/or conservative treatment inconsistent with disabling pain.  (R. 17-20).  As set forth above, the ALJ erred in failing to discuss the effect of Plaintiff's inability to afford medical insurance on his course of treatment.  Because Plaintiff's health insurance argument relates directly to his treatment for headaches, the ALJ must re-evaluate Dr. Mihaescu's opinions on remand and explain what, if any, impact Plaintiff's lack of health insurance has on his conclusions.   In so doing, the ALJ also should fully explain any credibility findings as to Plaintiff's testimony and other record evidence regarding the frequency and severity of his headaches and the resultant effect, if any, on his ability to work on a regular and continuing basis.[3]

### III. CONCLUSION

Under the Social Security regulations, a federal district court reviewing the decision of the Commissioner denying benefits has three options.  It may affirm the decision, reverse the decision and award benefits directly to a claimant, or remand the matter to the Commissioner for further consideration.   42 U.S.C. § 405(g) (sentence four).   In light of an objective review of all evidence contained in the record, I find that the ALJ's decision is not supported by substantial

---

[3] In opposition, Defendant suggests many reasons why the ALJ's evaluation of Dr. Mihaescu's opinion and Plaintiff's credibility is supported by substantial evidence. (ECF No. 18, at 16-20). Many of these reasons, however, were not reasons expressly relied upon by the ALJ. Id. The review of an administrative order must be judged upon those bases set forth and disclosed in that order. Fargnoli v. Massanari, 247 F.3d 34, 44 n. 7 (3d Cir.2001). Thus, to consider *post hoc* rationalizations not listed by the ALJ runs contrary to the law. Id.

evidence because, in evaluating the opinion of Plaintiff's treating neurologist and discussing his RFC and credibility findings, the ALJ failed to address Plaintiff's testimony and other record evidence regarding his lack of medical insurance as an explanation for his failure to pursue more regular and aggressive medical treatment, especially with regard to his headaches. The case therefore is remanded for further consideration in light of this Opinion. For these and all of the above reasons, Plaintiff's Motion for Summary Judgment is granted to the extent set forth herein, and Defendant's Motion for Summary Judgment is denied to that same extent. An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JUSTIN A. MORTON,

    Plaintiff,

vs.

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Civil Action No. 14-387

AMBROSE, Senior District Judge

## ORDER OF COURT

AND NOW, this 4th day of May, 2015, after careful consideration of the submissions of the parties and for the reasons set forth in the Opinion accompanying this Order, it is ordered that it is ordered that Plaintiff's Motion for Summary Judgment (Docket No. 13) is GRANTED, and the matter is REMANDED to the Commissioner for further proceedings consistent with the Opinion attached hereto. Defendant's Motion for Summary Judgment (Docket No. 17) is DENIED to the extent set forth in the Opinion attached hereto.

BY THE COURT:

/s/ Donetta W. Ambrose
Donetta W. Ambrose
U.S. Senior District Judge